09-1063-cv
*Bridgeport Guardians v. Delmonte*

## UNITED STATES COURT OF APPEALS

## FOR THE SECOND CIRCUIT

August Term, 2009

(Argued:   December 14, 2009                    Decided:   April 27, 2010 )

Docket Nos. 09-1063-cv(L), 09-1495-cv(CON)

BRIDGEPORT GUARDIANS, INC., CHARLES D. SMITH, ARTHUR CARTER, RICHARD HERLIHY, THOMAS D. FLYNN, RAYMOND SHERWOOD, CARLOS MEDINA, JOE ANN SIMMONS, JAMES SHEFFIELD, BRENDA DIXON, STEPHEN NELSON AND KIMBERLY PARKS,

*Plaintiffs-Appellees*,

THEOPHILUS B. MEEKINS AND DAVID DANIELS,

*Plaintiffs*,

TNT SPECIALIZED DIVISION,

*Petitioner*,

WILLIAM BAILEY AND HISPANIC SOCIETY−BRIDGEPORT POLICE DEPARTMENT, INC.,

*Intervenors-Plaintiffs*,

− v. −

ARTHUR J. DELMONTE, JOHN DEVINE, JOHN C. O'LEARY, FRANK DELAQUILA, LARRY HARRIS, JR., ROBERT BRUNO, JAMES MCCARTHY, CITY OF BRIDGEPORT, SGT. GLENN PRENTICE, CPT. WILLIAM GIBLIN, RICHARD CUMMINGS, COUNCIL # 15 POLICE UNION, AND SGT. DAVID J. HOYT

*Defendants-Appellees*,

ALL DEFENDANTS, AFSCME, COUNCIL 15, LOCAL 1159, AFL-CIO, BRIDGEPORT POLICE UNION, AND GEORGE ZWALLY,

*Defendants*,

TODD HOBEN, JORGE CINTRON, DAVID GARCIA, MARK BELINKIE, MARK GRAHAM, MARTIN M. HENUE, WILLIAM REILLY, JAMES BORRICO AND KURT HOBEN,

*Movants-Appellants*.

---

Before: CABRANES, B.D. PARKER, *Circuit Judges*, and AMON, *District Judge*.[*]

---

Movants-appellants appeal from an order of the United States Court for the District of Connecticut (Arterton, *J*.) denying them intervention pursuant to Fed. R. Civ. P. 24(a)(2). In addition, movants-appellants appeal from an Interim Modification Order entered by the district court, contending that the order violates Title VII of the Civil Rights Act of 1964, and the Fourteenth Amendment of the Constitution. Reversed and remanded.

---

KAREN LEE TORRE, Law Offices of Norman A Pattis, LLC, New Haven, CT, *for Movants-Appellants*.

SEAN K. MCELLIGOTT, Koskoff, Koskoff & Bieder, P.C., Bridgeport, CT, THOMAS W. BUCCI, Willinger, Willinger & Bucci P.C., Bridgeport, CT, *for Plaintiffs-Appellees*.

BETSY A. EDWARDS, Office of the City Attorney, Bridgeport, CT*, for Defendants-Appellees*.

---

BARRINGTON D. PARKER, *Circuit Judge*:

Appellants – eight officers in the Bridgeport Police Department and one aspiring applicant to the police department, none of whom is African-American – appeal from an order of the United States District Court for the District of Connecticut (Arterton, *J*.) denying their motions to intervene in a lawsuit filed over three decades ago by African-American officers. *See* J.A. 1 (noting that the initial complaint in this case was filed on May 1, 1978); Fed. R. Civ. P. 24(a)(2). Simultaneously, the movants appeal an Interim Modification Order, on the ground that

---

[*] The Honorable Carol B. Amon, United States District Court Judge for the Eastern District of New York, sitting by designation.

the order violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Fourteenth Amendment of the United States Constitution. For the reasons expressed, we reverse the district court's denial of the motions to intervene, and we remand for reconsideration of the Interim Modification Order.

## BACKGROUND

This appeal stands as the latest chapter in a lawsuit that began in 1978 when plaintiffs-appellees Bridgeport Guardians, a group of African-American police officers, filed suit under Title VI and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*, § 2000e *et seq.*, against the City of Bridgeport and the Bridgeport Police Commissioners, alleging racial discrimination in the Police Department. In 1982, after a lengthy trial, the district court (Daly, *J.*) found extensive discrimination in assignment, working conditions, and the disciplinary process in the Department. *Bridgeport Guardians, Inc. v. Delmonte*, 553 F. Supp. 601, 609-18 (D. Conn. 1982).

To remedy these violations, the district court issued a Remedy Order which set out new procedures for pairing officers and assigning officers among the specialized and geographic units. The Remedy Order also established a rotation system to ensure equal access to the specialized divisions regardless of race, and also confirmed that the City "shall not discriminate on the basis of race in the initiation of disciplinary charges or imposition of penalties" and "shall not subject any police officer to harassment, disciplinary action or different treatment of any kind because of such officer's race." *Id*. at 619. To oversee these changes, Judge Daly appointed a special master, awarded fees and costs to the plaintiffs, and noted that the Court would "maintain continuing jurisdiction in this matter to insure complete and continuing compliance with all aspects of this Order." *Id*. at 619-21.

3

The order has remained in effect, in various forms, for a quarter century, surviving dramatic changes in the department, the city, and the law. *See Bridgeport Guardians, Inc. v. Delmonte*, 248 F.3d 66, 68-73 (2d Cir. 2001) (describing the protracted litigation and affirming a district court's approval of a stipulation modifying the order). For example, in 1982, the year before Judge Daly issued factual findings and the remedial order, there were only thirty-three black police officers in the department. *Bridgeport Guardians*, 553 F. Supp. at 607. Today, that number has doubled to 68. *See* Mot. to Vacate Ex. C, Bridgeport Police Department Totals, *Bridgeport Guardians*, No. 78-cv-00175 (D. Conn. July 3, 2008). As of 1983, 97% of the black officers were assigned to patrol duties. *Bridgeport Guardians*, 553 F. Supp. at 607. Today, fewer than half of black officers are assigned to patrol duties. *See* Bridgeport Police Department Patrol Divisions, Mot. to Vacate Ex. E, *supra*. Further, in 1983, all supervisory officers were white, and no supervisory officers were black or Hispanic. *Bridgeport Guardians*, 553 F. Supp. at 609. Today, 15% of all supervisors are black and 32% of all supervisors are minorities. *See* Bridgeport Police Department Supervisory Ranks, Mot. to Vacate Ex. F, *supra*. Significantly, since the Remedy Order went into effect, the department has been led by two African-American Chiefs of Police. *Id.* Throughout this period, the only constant has been that the police department of Connecticut's third-largest city has been run under the supervision of a federal court and its appointed special master.

In July 2008, the City moved pursuant to Rule 60(b) to vacate the Remedy Order on the ground that changed circumstances rendered the order inapplicable or unnecessary. After a hearing before a magistrate judge, the Guardians and the City submitted a Joint Proposed Order, which, instead of terminating the Remedy Order, modified it. The court adopted the Joint Proposed Order in the form of an Interim Modification Order. The court further ordered that, on

4

the motion of either party, the court would assess the impact of the interim order on or after September 1, 2010.

Among other things, the interim order requires the City to evaluate all promotional and entry-level hiring examinations to document whether selection procedures and the examination results evidence a disparate impact on minority candidates, including, but not limited to, black candidates. The order further requires the City to "take all appropriate and available steps" to mitigate any of the procedures' disparate impact on minority candidates "by utilizing race-neutral measures, including the appropriate weighting of the oral and written portions of the examination to reduce the disparate impact while preserving the validity and usefulness of the examination."

Another provision in the order requires the City to "evaluate all entry-level hiring examinations to determine whether the examination results or procedures evidence a disparate impact on minorities." That provision similarly requires the City to "attempt to reduce any identified disparate impact on minority candidates by utilizing race-neutral measures, including the appropriate weighting of the oral and written portions of the examination to reduce the disparate impact while preserving the validity and usefulness of the examination."

Near its conclusion, the Interim Modification Order provides that "[n]othing in this Order shall be used to the advantage or disadvantage of any party in collective bargaining negotiations or interest arbitrations occurring during or after the Interim Period." The Court added that "[t]his Order, related proceedings, and any changes to the operation of the Bridgeport Police Department required to comply with this Order shall be inadmissible in such negotiations and arbitrations."

In August 2008, a group of officers moved to intervene, voicing objections to the terms of

5

the order. The motion, filed by eight white and Hispanic police officers,[1] argued that the terms of the Interim Modification Order would allow the City "to adopt race-conscious promotional and hiring practices," and to alter the scoring of civil-service examinations based on candidates' race or ethnicity in violation of Title VII and the Fourteenth Amendment. In November 2008, a second motion to intervene was filed by Kurt Hoben, "a white male who intends to seek hire as a police officer in the City of Bridgeport and compete in the next civil service examination process administered by the City for that purpose." That motion challenged the provisions of the Interim Modification Order requiring the City to identify and reduce any disparate impact resulting from hiring decisions.

The district court rejected both motions. *Bridgeport Guardians, Inc. v. Delmonte*, 256 F.R.D. 308 (D. Conn. 2009). The court reasoned that the rank of detective would not be immediately affected by the Interim Modification Order, and that the eight current officers' "interest related to the process for being promoted to detective thus falls away." *Id.* at 315. The court further reasoned that these officers' concerns about future promotions were too "speculative and contingent" to constitute a "claimed interest" supporting intervention. *Id.* at 318. As to Hoben, the court reasoned that his clams regarding hiring decisions were also too speculative to justify intervention. *Id.* at 316. On appeal, movants challenge this order, as well as the legality of Interim Modification Order.[2] We agree with them with respect to intervention, and we reverse.

---

[1] These officers are Todd Hoben, Jorge Cintron, David Garcia, Mark Belinkie, Mark Graham, Martin Henue, William Reilly, and James Borrico.

[2] The Bridgeport Police Union also appealed the district court's entry of the Interim Modification Order. On September 30, 2009, the Union's appeal was withdrawn with prejudice pursuant to a stipulation for dismissal. *See* Order, *Bridgeport Guardians, Inc. v. Delmonte,* No. 09-1284-cv (2d Cir. filed Sept. 30, 2009).

**DISCUSSION**

We have jurisdiction to review the order denying the motion to intervene pursuant to 28 U.S.C. § 1291 "[b]ecause a district court's order denying intervention is a final order." *N.Y. News, Inc. v. Kheel*, 972 F.2d 482, 485 (2d Cir. 1992). We have jurisdiction to review the Interim Remedial Order because it is an interlocutory order modifying an injunction. *See* 28 U.S.C. § 1292(a)(1).

A district court has abused its discretion if it has (1) "based its ruling on an erroneous view of the law," (2) made a "clearly erroneous assessment of the evidence," or (3) "rendered a decision that cannot be located within the range of permissible decisions." *Sims v. Blot,* 534 F.3d 117, 132 (2d Cir. 2008) (internal quotation marks omitted). Errors of law or fact may constitute such abuse. *SG Cowen Sec. Corp. v. Messih*, 224 F.3d 79, 81 (2d Cir. 2000).

A. Motions to Intervene

Under Fed. R. Civ. P. 24(a)(2), "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." The district court's reason for rejecting the motions to intervene was that none of the movants could meet Rule 24(a)(2)'s "interest" requirement. For an interest to be cognizable by Rule 24(a)(2), it must be "direct, substantial, and legally protectable." *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990). As explained below, we think that all the movants meet this standard.

Those movants who are current police officers argue that they have a non-speculative interest in the court's Interim Modification Order because they wish to become detectives in

7

accordance with the City's civil-service process. They also argue that they have protectable interests in future promotional opportunities, because of the perceived risk that the City will engage in illegal race-norming of the tests required for promotions. These interests, they argue, will be impaired if the City favors minority applicants in promoting officers.

The officers rely heavily upon *Brennan v. New York City Board of Education*, 260 F.3d 123, 130 (2d Cir. 2001). In *Brennan*, the United States brought a Title VII action against the New York City Board of Education alleging that the Board engaged in employment discrimination. The parties reached a settlement agreement that "conferred certain employment rights on a number of persons who [were] African-American, Hispanic, Asian, or female." *Id.* at 126. After the parties proposed the agreement to the district court for approval, several white, male employees of the Board moved to intervene under Rule 24(a)(2) claiming that "intervention was necessary to protect their present employment status– in particular, their seniority rights." *Id.* The district court denied intervention on the ground that the movants "could not assert a cognizable interest under Rule 24(a)(2) because they had presumptively obtained their employment status as a result of discrimination, they had no property right in that status, and any adverse effect of the Agreement was remote and speculative." *Id.*

We reversed. We noted that "the case law in numerous other circuits [had recognized] that the kind of interest asserted by the appellants [was] cognizable under Rule 24(a)(2)." *Id.* at 131-32 (collecting cases). We reasoned that the agreement could potentially cause their displacement or demotion, *id.* at 127, and that "the effects of a loss of relative seniority rights should not be regarded as too speculative and remote to justify intervention save, perhaps, in a case where a concrete effect on an employee is impossible." *Id.* at 132 (footnote omitted). Thus, we concluded that intervention was warranted because the movants' interest in the underlying

8

action and the settlement agreement was "for purposes of standing identical to that of the [beneficiaries of the settlement agreement]." *Id*. at 130.

The interest put forward by the current officers is similar to the interest advanced in *Brennan*. Like the movants in *Brennan*, appellants are white and Hispanic male employees who claim that their employer has reached a settlement agreement in an employment discrimination suit that violates their rights. They, like the intevenors in *Brennan*, have an interest in their employers' employment practices and, therefore, a settlement agreement that they assert infringes their statutory and constitutional rights. Under *Brennan*, therefore, the current officers have asserted an interest in their promotion that is sufficient for intervention, and have asserted that as a practical matter the interim order could impede their rights.[3] As their rights are not represented by any other party – especially now that the Union is no longer involved – they are entitled to intervene.

Because the officers are entitled to intervene based on their interest in their promotion, we need not consider the district court's further conclusion that their separately articulated interest in future promotions was too "speculative and contingent" to warrant intervention. *See Bridgeport Guardians,* 256 F.R.D. at 318. We observe, however, that in reaching this conclusion the District Court surveyed several Title VII cases and held that appellants' claims "conflate[d] permissible adjusting of civil-service hiring procedures with impermissible race norming." *Id.* at 317. In doing so, the court resolved a fact-intensive question that would be more properly

_____

[3] Unlike the district court, we do not find that "[t]he Movants' interests related to the process for being promoted to detective fall away" simply because they did not object to the City's assertion that it would not apply the Interim Modification Order to the extant detective list. *See Bridgeport Guardians,* 256 F.R.D at 315. Notwithstanding the City's assertion, whether the interim order will actually affect the current detective list appears to be a fact-intensive question that is intertwined with the merits of the officers' claims.

addressed after the movants have been permitted to take discovery and present evidence. *See*

*Oneida Indian Nation v. New York,* 732 F.2d 261, 265 (2d Cir. 1984) ("[E]xcept for allegations

frivolous on their face, an application to intervene cannot be resolved by reference to the ultimate

merits of the claims which the intervenor wishes to assert following intervention.").

In a second motion to intervene, aspiring applicant Hoben claims an interest in applying

to the Department under a process which is fair and non-discriminatory. Here, we again find

*Brennan* instructive. In *Brennan*, we observed that "where a proposed intervenor's interests are

otherwise unrepresented in an action," the interest requirement for "intervention is no more

burdensome than the standing requirement." *Id*. at 130. Because none of the other parties in this

suit are charged with representing the interests of applicants, Hoben's interests are unrepresented,

and he need only, at this point, satisfy the standing requirement.

Hoben's interest is similar to the interest protected in *Adarand Constructors, Inc. v. Peña,*

515 U.S. 200 (1995). In *Adarand Constructors*, the Supreme Court found that the petitioner

could challenge a statutory and regulatory framework that assisted minority-controlled small

businesses. The Court reasoned that the petitioner could show that, because he was likely to bid

on the affected contracts, the contractor bidding framework could cause imminent future harm.

515 U.S. at 211-12. The injury in *Adarand* was that a "discriminatory classification prevent[ed]

the plaintiff from competing on an equal footing." *Id.* at 211 (quotation marks omitted).

Because Hoben represented in the district court and this Court that he intends to apply for a

Department position the next time the city offers a hiring examination, because he claims that the

interim order will prevent him from competing with minority applicants on equal footing, and

because the interests of future applicants are not otherwise represented in this case, we conclude

that he, too, may intervene.

To be sure, "[a]n interest that is . . . contingent upon the occurrence of a sequence of events before it becomes colorable" is not sufficient for intervention under Rule 24(a)(2). *Wash. Elec. Corp.*, 922 F.2d at 97. Here, however, the Interim Modification Order preempts the Bridgeport City Charter and *requires* the City to take "all appropriate and available remedial steps" to correct disparate impact both in promotions and hiring. While the City might be able to implement the order in a number of different ways, the appellants should be allowed to at least argue that the City cannot comply with the order without violating Title VII, or that whatever course is chosen must comply with Title VII. It is premature at the intervention stage, and hence not necessary, to decide whether their arguments have legal merit.

## B. Discrimination Claims

Appellants request that this Court, in exercise of its discretion, vacate the district court's Interim Modification Order on the grounds that it violates Title VII. *See Kaplan v. Rand*, 192 F.3d 60, 67 (2d Cir. 1999) ("Although the general rule is that only a party of record may appeal a judgment, a nonparty may appeal when the nonparty has an interest that is affected by the trial court's judgment." (internal quotation marks omitted)). In *Ricci v. DeStefano,* 129 S. Ct. 2658, 2676 (2009), the Supreme Court held that an employer "may not take the greater step of discarding [a] test altogether to achieve a more desirable racial distribution of promotion-eligible candidates– absent a strong basis in evidence that the test was deficient and that discarding the results is necessary to avoid violating the disparate-impact provision."

Because the Supreme Court issued *Ricci* after the order appealed from, the district court did not have the benefit of *Ricci* when it issued its interim order. Accordingly, we decline to exercise our discretionary power to review the merits of the underlying order and remand so that the district court can do so in the first instance.

11

**CONCLUSION**

For the foregoing reasons, the order of the district court denying intervention is reversed, and the district court is instructed to permit appellants to intervene in this action. The cause is remanded to the District Court to reconsider the Interim Modification Order in light of (1) the Supreme Court's decision in *Ricci v. DeStefano*, 129 S. Ct. 2658 (2009), and (2) any submissions that appellants, now parties to this action, may wish to make with respect to the Interim Modification Order. As we remand, however, we again note that this case was filed in 1978 and that the world has turned over many times since then. Except in highly unusual circumstances, it is the business of cities, not federal courts or special masters, to run police departments. At some point in time this litigation has to be ended. On remand, we are confident that the capable district judge will look hard for that point.