The LOUIS BERGER GROUP, INC., Plaintiff,

v.

STATE BANK OF INDIA, Defendant,

and

Progressive Constructions Limited, Intervenor.

No. 11 Civ. 0410(VM).

United States District Court, S.D. New York.

Aug. 9, 2011.

low, Progressive's motions are GRANT-ED.

John E. Clark, J. Clark & Associates, LLC, Montclair, NJ, Andrew E. Anselmi, McCusker, Anselmi, Rosen, Carvelli & PC, Florham Park, NJ, for Plaintiff.

David Mark Rabinowitz, Moses & Singer LLP, New York, NY, for Defendant.

Gregory Aaron Horowitz, Joel Malen Taylor, Matthew Charette Temkin, Kramer, Levin, Naftalis & Frankel, LLP, New York, NY, for Intervenor.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff The Louis Berger Group, Inc. ("Berger") brought this action against defendant State Bank of India ("Bank of India") seeking monetary and injunctive relief for the Bank of India's refusal to pay on demand under an irrevocable letter of credit that Progressive Constructions Limited ("Progressive") had caused to be issued by the Bank of India in favor of Berger. On January 27, 2011, Progressive moved to intervene in this matter and, on February 14, 2011, it moved to stay this proceeding. For the reasons discussed be-

## I. BACKGROUND[1]

In 2006, the United States Agency for International Development (USAID) initiated an infrastructure program in Southern Sudan, which included a plan to construct a road between two Sudanese cities. USAID awarded a $700 million contract to Berger to undertake aspects of the program. In April of 2009, Berger accepted Progressive's bid to complete elements of the road construction and executed an agreement (the "Agreement") for total consideration of $69,750,453. On April 30, 2009, Berger "purported to give possession of the [construction] site to" Progressive. (Taylor Decl. Ex. A at 6.) In June of 2009, Berger sent a Rate of Progress letter to Progressive, indicating that its work rate was too slow. Two months later, Berger sent a second Rate of Progress letter explaining, in relevant part, that Progressive was in violation of the Agreement because it had failed to provide Berger with performance security in the form of a letter of credit ("LOC"). Berger sent a third Rate of Progress letter requesting performance and mobilization security on August 20, 2009. After additional correspondence, Berger sent a Notice to Cure letter to Progressive on September 10, 2009, stating that it would deem Progressive in default if it did not provide performance security by September 18, 2009.

---

1. The factual and procedural summary below is derived from the following documents and any exhibits attached thereto: Berger's Complaint, dated January 20, 2011; Memorandum of Law of Progressive Constructions Limited in Support of Its Motion to Intervene and for a Stay of Proceedings in this Action ("Progressive Mem."), dated March 18, 2011; Memorandum of Law of the Louis Berger Group in Opposition to the Motion to inter-

vene and Stay, dated April 4, 2011; and Declaration of Joel M. Taylor in Support of its Motion to Show Cause ("Taylor Decl."); Memorandum of Defendant, State Bank of India, in Support of Motion of Progressive to Intervene and for a Stay ("Bank of India Mem."); and Letter to the Court, on behalf of Progressive, dated February 22, 2011. Except where specifically referenced, no further citation to these sources will be made.

On September 18, 2009, Progressive's Chairman met with Andrew V. Bailey II ("Bailey"), a Senior Vice President for Berger. Progressive alleges that, at the meeting, Bailey agreed to consider Progressive's Agreement under a revised work plan if Progressive obtained two LOCs. After the meeting, Progressive obtained the two LOCs, providing them to Berger on September 29, 2009. The first LOC (the "First LOC") was obtained from the Bank of India and was in the amount of $3,401,071; the second LOC (the "Second LOC") was obtained from JPMorgan Chase Bank and was in the amount of $3,573,975.[2] Two days later, on October 1, 2009, Berger sent a Notice of Default to Progressive. Despite this Notice, Progressive sent Berger a revised work plan on October 12, 2009. Nevertheless, Berger "forcibly expelled" Progressive from the work site on November 4, 2009. (Taylor Decl. Ex. A at 24.)

Progressive proceeded to file two actions against Berger in different fora. First, on November 9, 2009, Progressive petitioned the City Civil Court of Hyderabad, India (the "Indian Civil Court"). Progressive sought interim injunctions in aid of arbitration restraining payment on both LOCs, and the Indian Civil Court granted preliminary injunctions. Second, on October 18, 2010, Progressive commenced an arbitration in New Jersey against Berger (the "Arbitration"), submitting its case to the American Arbitration Association. In the Arbitration, Progressive claimed that Berger (1) breached its contract, (2) breached its covenant of good faith and fair dealing, and (3) is liable to Progressive for promissory fraud. Progressive also requested that the Arbitrators enjoin encashment of the LOCs pending its request for permanent injunctive relief.

After Progressive filed the actions described above, Berger presented the First LOC to the Bank of India, demanding payment. On January 4, 2011, the Bank of India indicated that it would not encash the First LOC due to the injunction granted by the Indian Civil Court. As a result, Berger filed its own action in this Court on January 20, 2011, requesting specific performance on the First LOC from the Bank of India and related damages for the failure to pay on the First LOC.

The record before the Court is not entirely clear regarding the court proceedings in India. However, while Berger's action was pending in this Court, the Indian Civil Court held on February 14, 2011 that it had no jurisdiction over Progressive's petition. Then, on February 15, 2011, what appears to be an intermediate Indian appellate court ("Indian Appellate Court") issued two interim orders enjoining encashment of the LOCs until February 21, 2011. The Indian Appellate Court subsequently extended the injunction pending a further determination. Currently, it appears that a high Indian appellate court is considering an appeal of the Indian Civil Court's decision.

---

**2.** The Agreement included two discrete projects for Progressive to perform. Progressive obtained one LOC for each of these projects. The Second LOC is the subject of *Louis Berger Group, Inc. v. JPMorgan Chase Bank, N.A.*, No. 11 Civ. 430, 2011 WL 2837462 (N.D.Ill. July 18, 2011) (the "Illinois Action"). In the Illinois Action, Berger sought to encash the Second LOC, JPMorgan Chase moved to stay the proceedings until the resolution of ongoing arbitration proceedings in New Jersey, and Progressive moved to intervene. On facts similar to the case before this Court, the Honorable Ronald A. Guzman granted a motion to stay in the Illinois Action. However, Judge Guzman denied Progressive's motion to intervene, finding that JPMorgan would adequately represent Progressive's interests because it would argue against encashment of the Second LOC. By contrast, as discussed more fully below, in this case the Bank of India takes no position on whether the First LOC should be encashed.

Also on February 14, 2011, Progressive applied for an order to show cause from this Court, seeking: (1) permission to intervene in this matter; (2) a preliminary injunction (a) requiring Berger to withdraw its demand on the First LOC, and (b) enjoining Berger from making any demand on the First LOC pending final resolution of the Arbitration; and (3) a stay of this matter pending final resolution of the Arbitration. The Court held a hearing on Progressive's order to show cause on February 17, 2011, and denied Progressive's request for a preliminary injunction on February 28, 2011, reserving ruling on the remaining issues until they were more fully developed.

Meanwhile, on July 22, 2011, the Arbitrators denied without prejudice to appeal Progressive's motion to enjoin the encashment of the two LOCs. The remainder of Progressive's claims are still pending in Arbitration.

## II. *DISCUSSION*

### A. *INTERVENTION*

Rule 24 of the Federal Rules of Civil Procedure allows a party to intervene in an action by right or by permission. The Court will consider each form of intervention in turn.

#### 1. *By Right*

▮ Under Rule 24(a)(2) of the Federal Rules of Civil Procedure ("Rule 24(a)(2)"), the Court must grant an intervention by right when a party: (1) files a timely motion; (2) claims an interest relating to the property or transaction that is the subject of the action; (3) is so situated that disposing of the action without intervention may impair or impede the party's ability to protect its interest; and (4) has an interest not adequately represented by other parties. *Bridgeport Guardians, Inc. v. Delmonte,* 602 F.3d 469, 473 (2d Cir. 2010). Failure to meet any one of these

four requirements is grounds for denial. *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.,* 471 F.3d 377, 389 (2d Cir. 2006).

▮ Progressive satisfies the first, second, and fourth elements of Rule 24(a)(2), but cannot fulfill the third. Consequently, the Court will not grant intervention by right. However, because "substantially the same factors [as intervention of right] are considered in determining whether to grant an application for permissive intervention," the Court will proceed to consider each element. *Hnot v. Willis Group Holdings, Ltd.,* 234 Fed. Appx. 13, 14 (2d Cir.2007) (internal quotation marks omitted).

▮ With respect to the timeliness element, neither party disputes that Progressive's motion was timely filed. Under the second element, a proposed intervenor's interest is cognizable by Rule 24(a)(2) if it is direct, substantial, and legally protectable. *Bridgeport Guardians,* 602 F.3d at 473. Where a party procures and secures an LOC with its own assets, its interest is· cognizable in an action concerning the LOC. *Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.,* 782 F.Supp. 870, 875 (S.D.N.Y.1991). Here, Progressive obtained the First LOC and will be obligated to compensate the Bank of India for the First LOC's encashment if Berger succeeds in this action. Moreover, Progressive is entitled under New York Uniform Commercial Code § 5–109 (" § 5–109") to seek to enjoin an issuer from honoring an LOC if encashment would facilitate a material fraud. *See* § 5–109. Consequently, Progressive satisfies the interest element of Rule 24(a)(2).

▮ Under the fourth element, Progressive can show that it is not adequately represented. A party need only show "that representation of his [or her] interest

may be inadequate; and the burden of making that showing should be treated as minimal." *Dow Jones & Co. v. U.S. Dep't. of Justice*, 161 F.R.D. 247, 254 (S.D.N.Y. 1995) (internal quotation marks omitted). Though the Bank of India supports Progressive's motion to intervene and motion to stay the instant action, it "takes no position on whether Progressive is entitled to relief" under the fraud theory asserted in the Indian Civil Court and Arbitration. (Bank of India Mem. at 2.) As such, the Bank of India is unlikely to defend Progressive's asserted interests in enjoining encashment of the First LOC as vigorously as Progressive would.

However, Progressive cannot satisfy the impairment element of Rule 24(a)(2). While this case requires the Court to decide whether the Bank of India must encash the First LOC, which in effect will determine whether Progressive is liable to the Bank of India, it will not prevent Progressive from protecting its interests in another forum. Indeed, Progressive has already filed claims to protect its interest in the Indian Civil Court and the Arbitration. These actions, which allege that the LOCs are invalid, will enable Progressive to protect itself against any adverse decision in this Court. *See Union Switch & Signal, Inc. v. St. Paul Fire & Marine Ins. Co.*, 226 F.R.D. 485, 488 (S.D.N.Y. 2005) (finding no impairment where a proposed intervenor could seek indemnification in another forum against any liability incurred through an adverse ruling in the court). Thus, Progressive cannot satisfy the impairment element of Rule 24(a)(2). Accordingly, the Court denies its motion to intervene pursuant to Rule 24(a)(2). *See MasterCard Int'l*, 471 F.3d at 389.

### 2. Permissive

Under Rule 24(b)(1)(B) ("Rule 24(b)(1)(B)") of the Federal Rules of Civil Procedure, the Court may grant permissive intervention when: (1) an application is timely; and (2) a federal statute confers a conditional right to intervene or (3) an applicant's claim and the main action share a question of law or fact in common. *United States v. City of New York*, 198 F.3d 360, 367 (2d Cir.1999). "A district court has broad discretion in deciding whether to grant permissive intervention," but must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights. *S.E.C. v. Bear, Stearns & Co.*, No. 03 Civ. 2937, 2003 WL 22000340, at *2 (S.D.N.Y. Aug. 25, 2003).

First, as discussed above, neither party disputes that Progressive's motion is timely. Second, as no federal statute grants a right to intervene, Progressive must show that the instant action and its putative claim share a common question of law or fact. However, "[t]he words claim or defense [in permissive intervention] are not to be read in a technical sense, but only require some interest on the part of the applicant." *Dow Jones & Co.*, 161 F.R.D. at 254. If permitted to intervene, Progressive intends to assert that the LOCs were obtained by fraud, are invalid under § 5–109, and that the Court should enjoin the Bank of India from encashing the First LOC. Consequently, Progressive has demonstrated that the current dispute between Berger and the Bank of India, on the one hand, and Progressive's putative claim, on the other, share the common question of whether the First LOC may not be encashed because it was fraudulently obtained.

Finally, the Court is not convinced that Progressive's intervention will cause any undue delay. The Court's decision to stay the current action pending arbitration will allow the parties to resolve all underlying disputes concerning the LOCs before the Court determines whether the First LOC

should be encashed. Consequently, Progressive's permissive intervention will not delay the Court's decision, but will ensure that all relevant parties to the dispute are present before the Court. Accordingly, the Court grants Progressive's motion to intervene pursuant to Rule 24(b)(1)(B).

## B. *MOTION TO STAY*

 Progressive urges the Court to stay the current proceedings between Berger and the Bank of India until the the Arbitration between Progressive and Berger is completed. "In some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court ... as a matter of its discretion." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n. 23, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). To determine whether to stay proceedings pending arbitration, the Court must weigh four considerations:

> first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

*Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir.2008)

 Regarding the first consideration, it is undisputed that Progressive and Berger agreed to arbitrate disputes arising under their agreement. Concerning the second consideration, Berger asserts that the LOC agreements are independent of the underlying Agreement between Progressive and Berger and, therefore, the First LOC is not arbitrable. While the

Court agrees that the First LOC is not arbitrable, a stay is favored where "at least one of the issues in the suit is within the scope of the arbitration agreement." *Kolacek v. Gemexco Trading, Inc.*, No. 90 Civ. 5760, 1991 WL 2857, at *2 (S.D.N.Y. Jan. 10, 1991). Here, the Court finds that the issue of the First LOC's validity is relevant to both the Arbitration and the instant action. In the Arbitration, Progressive asserts that Berger "wrongfully induced it to deliver the [LOCs] by making materially false promises concerning its ongoing review of [Progressive's] performance under the construction contract." (Progressive Mem. at 11.) Progressive argues that this constitutes fraud and invalidates the LOCs under § 5–109. In the instant action, the Court could enjoin the Bank from encashing the First LOC if Berger's actions were fraudulent and render the First LOC invalid. *See* N.Y.U.C.C. § 5–109(b) ("If an applicant claims that a required document is forged or materially fraudulent ... a court of competent jurisdiction may temporarily or permanently enjoin the issuer from honoring a presentation or grant similar relief against the issuer or other persons."). Consequently, the Court finds that the second arbitration consideration weighs in favor of a stay. The Court also briefly notes that the third consideration is not relevant because no federal statutory claims have been asserted.

 Under the fourth consideration, the Court must weigh whether to stay the proceedings given that some, but not all, of the issues are arbitrable. A stay is usually appropriate where arbitrable and non-arbitrable claims arise out of the same set of facts and arbitration may decide the same facts at issue in the litigation. *Argus Media Ltd. v. Tradition Fin. Servs. Inc.*, No. 09 Civ. 7966, 2009 WL 5125113, at *3 (S.D.N.Y. Dec. 29, 2009).

The movant in such circumstances must establish that "there are issues common to the arbitration and the courts, and that those issues will finally be determined by the arbitration." *Id.* (internal quotation marks omitted). If the movant meets this burden, it must then show that "it will not hinder arbitration, that the arbitration will be resolved within a reasonable time, and that any delay that may occur will not cause undue hardship to the nonmoving party." *Birmingham Assocs. Ltd. v. Abbott Labs.*, 547 F.Supp.2d 295, 302 (S.D.N.Y.2008), *aff'd*, 328 Fed.Appx. 42 (2d Cir.2009).

The Court finds that Progressive has met this burden. First, Progressive demonstrates that both the Arbitration and the instant action concern the events leading to and immediately following Progressive's procurement of the LOCs. The Arbitration will determine, in relevant part, whether (1) Progressive was obligated to provide Berger with LOCs prior to Berger's submission of a progress payment and (2) Berger was required to review the project's progress under a revised work plan after Progressive obtained the LOCs. These same factual issues will, in turn, determine whether the First LOC is valid and must be honored by the Bank of India. *See* § 5–109. As such, the facts giving rise to the Arbitration are necessarily related to Berger's instant claim and "will likely provide significant insight into, if not actually resolve, the claims asserted in this action." *Orange Chicken, L.L.C. v. Nambe Mills, Inc.*, No. 00 Civ. 4730, 2000 WL 1858556, at *9 (S.D.N.Y. Dec. 19, 2000); *see also NPS Commc'ns, Inc. v. Cont'l Grp., Inc.*, 760 F.2d 463, 465 (2d Cir.1985) (staying plaintiff's antitrust action while defendant's contract claim was in arbitration even though the two claims "barely overlap").

Second, Progressive is unlikely to hinder the Arbitration as it was "the part[y] to demand arbitration in the first instance." *Argus Media Ltd.*, 2009 WL 5125113, at *3. Third, there is no indication that the Arbitration will not conclude within a reasonable time. Finally, there is no showing that Berger will suffer prejudice "from a brief stay to allow the arbitration to conclude." *Andrews v. Lasser Marshall, Inc.*, No. 97 Civ. 3827, 1997 WL 624986, at *1 (S.D.N.Y. Oct. 6, 1997). Thus, the fourth arbitration consideration also weighs in favor of staying the current action.

■ Additional considerations also support a stay. "Stays are particularly appropriate where they promote judicial economy, avoidance of confusion and possible inconsistent results." *Birmingham Assocs. Ltd.*, 547 F.Supp.2d at 302 (internal quotation marks omitted). Staying this case in favor of arbitration will not only promote judicial economy by eliminating any duplicative effort by the Court to resolve the issue of the First LOC's validity, it will also avoid any inconsistency that would arise if the Arbitration and Court were to reach different conclusions on the matter. Accordingly, the Court grants Progressive's motion to stay the instant action until the conclusion of the Arbitration between Progressive and Berger.

## III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 6) of Progressive Constructions Limited to intervene in this matter and for a stay of this action pending resolution of an arbitration proceeding currently underway in New Jersey involving plaintiff The Lewis Berger Group, Inc. and defendant State Bank of India is GRANTED.

**SO ORDERED.**